ORIGINAL

1  James A. Goodman, State Bar No. 89715
   EPSTEIN BECKER & GREEN, P.C.
2  1925 Century Park East, Suite 500
   Los Angeles, California 90067-2506
3  Telephone: 310.556.8861
   Facsimile: 310.553.2165
4  jgoodman@ebglaw.com

5  Attorneys for Defendant
   TURNER CONSTRUCTION COMPANY

6

7

FILED

2007 DEC 26  PH 2: 18

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  THOMAS THOMPSON,                    CASE NO. '07 CV 2412 JM JMA

12              Plaintiff,              San Diego Superior Court Case No.
                                        37-2007-00080755-CU-WT-CTL
13        v.
                                        NOTICE OF REMOVAL OF
14  TURNER CONSTRUCTION                 ACTION PURSUANT TO 28 U.S.C.
    COMPANY, a New York corporation     SECTIONS 1332 and 1441(b)
15  and DOES 1 through 20, inclusive,
                                        BY FAX
16              Defendants.

17

18

19        **PLEASE TAKE NOTICE** that Defendant Turner Construction Company

20  ("Defendant"), contemporaneously with the filing of this Notice, is effecting the

21  removal of the above-captioned action from the Superior Court of the State of

22  California for the County of San Diego to the United States District Court for the

23  Southern District of California.

24        The removal is based on 28 U.S.C. sections 1332 and 1441(b), specifically,

25  and on the following grounds:

26  **I.    PLEADINGS, PROCESS, AND ORDERS**

27        1.    On or about November 1, 2007, Plaintiff Thomas Thompson

28  ("Plaintiff") commenced the above-entitled action in the Superior Court for the

LA:467710v1                                    Thompson v. Turner Construction Company

County of San Diego by filing a complaint therein entitled <u>Thomas Thompson, an individual v. Turner Construction Company, a New York corporation, and Does 1-20, inclusive</u>, Case No. 37-2007-00080755-CU-WT-CTL ("Complaint"). The Complaint purports to state causes of action for: (1) Wrongful Termination in Violation of Public Policy; (2) Defamation - Slander; (3) Intentional Infliction of Emotional Distress; and (4) Negligent Infliction of Emotional Distress. True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Notice of Case Assignment are attached hereto collectively and incorporated herein by this reference as though set forth in full as Exhibit 1.

2.    On or about November 26, 2007 the Summons and Complaint were delivered to counsel for Defendant who had not agreed to accept service on behalf of Defendant. Defendant's counsel's subsequent offer to accept service through the Notice and Acknowledgement of Service procedure provided by California *Code of Civil Procedure* section 415.30 was ignored by Plaintiff.

3.    Exhibit 1 constitutes all the process, pleadings and orders delivered to any party in the Superior Court action and are incorporated herein.

## II.    DIVERSITY JURISDICTION

4.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one which may be removed to the United States District Court by Defendant pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action in which the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

### A.    Citizenship

5.    Defendant is informed and believes that Plaintiff was at the time of the filing of this action and at the time of removal, and still is, and at all relevant times has been a citizen of the State of California. Exhibit 1, Complaint, ¶ 1.

- 2 -

LA:467710v1

Thompson v. Turner Construction Company

6.    Defendant was, at the time of the filing of this action and at the time of removal, and still is, and at all relevant times has been a corporation formed under the laws of the state of New York (Exhibit 1, Complaint, ¶ 2), and has its principal place of business in New York. Defendant, therefore, is a citizen of New York. It is also the only defendant named in this action.

**B.    Fictitious Does**

7.    Defendant Does 1 through 20 are wholly fictitious. The Complaint does not set forth the identity or the status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. The naming of said fictitious defendants does not destroy the diversity of citizenship between the parties in this action. 28 U.S.C. section 1441(a).

**C.    Amount in Controversy**

8.    The amount in controversy in this matter exceeds the sum or value of $75,000.00, exclusive of interest and costs. It is well settled that, in determining whether a Complaint meets the $75,000.00 threshold amount in controversy set forth in 28 U.S.C. § 1332(a), a court should consider the aggregate amount of the claims and value of the claims. *Wolde-Meskel v. Vocational Instruction Project*, 166 F.3d 59, 62 (2nd Cir. 1999) [diversity statute confers jurisdiction over entire action, not just specific claims alleged in complaint, and, therefore, claims of single plaintiff are aggregated in order to satisfy amount in controversy]. The fact that a Complaint fails to specify the amount of damages in a dollar amount does not deprive this Court of jurisdiction. *See White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W.Va. 1994) [defendant may remove suit to federal court notwithstanding the failure of Plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining to place a specific dollar claim upon its claim."]. Defendant need only establish by a preponderance of the evidence that Plaintiff's claim is likely to exceed the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102

- 3 -

1    F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d

2    373, 376 (9th Cir. 1997).

3        9.    Here, Plaintiff seeks recovery on several fronts, including

4    compensatory damages for alleged lost past and future wages, and for emotional

5    distress. Complaint ¶¶ 36-37. Plaintiff does not limit the amount of damages he is

6    seeking.

7        10.    In his November 1, 2007 Complaint, Plaintiff alleges that he has had

8    difficulty obtaining and maintaining employment following his termination a year

9    earlier. Complaint, ¶ 42. Plaintiff's annual salary at the time of his termination in

10    October, 2006 was $64,896.

11        11.    Plaintiffs alleging emotional distress as a result of wrongful

12    termination regularly seek in excess of $75,000.00 in such damages. (*Keiffer v.*

13    *Bechtel Corp.*, 65 Cal. App. 4th 893, 895, 76 Cal. Rptr. 2d 827 (1998) [California

14    Court of Appeal upheld jury award in excess of $75,000.00 for emotional distress

15    damages]; *Silo v. CHW Medical Foundation*, 86 Cal. App. 4th 947, 955, 103 Cal.

16    Rptr. 2d 825 (2001) [jury award in excess of $75,000.00 in non-economic damages

17    was upheld in a wrongful termination lawsuit]; *Satrap v. Pacific Gas & Elec. Co.*,

18    42 Cal. App. 4th 72, 76, 49 Cal. Rptr. 2d 348 (1996) [jury award in excess of

19    $75,000.00 in non-economic damages was upheld].)

20        12.    Plaintiff's request for attorneys' fees may also be taken into account

21    to determine jurisdictional amounts. *Goldberg v. C.P.C. International, Inc.*, 678

22    F.2d 1365, 1367 (9th Cir. 1982). Plaintiff seeks an unspecified amount of

23    attorneys' fees. (Exhibit 1, Plaintiff's Prayer for Relief in Complaint).

24        13.    Considering the aggregate value of Plaintiff's claims, the amount in

25    controversy is in excess of $75,000.00. Therefore, the amount in controversy

26    requirement of 28 U.S.C. § 1332 has been met, and this action is removable to this

27    Court pursuant to 28 U.S.C. § 1441.

28    ///

LA:467710v1

## **TIMELINESS OF REMOVAL**

14.    This Notice of Removal is timely filed in that, although Plaintiff's Complaint has not yet been properly served, this Notice has been filed within thirty (30) days of receipt by Defendant's counsel of the Summons and Complaint and within one year of the filing of the Complaint.  28 U.S.C. § 1446.  The Complaint was received by Defendant's counsel on November 26, 2007.  Thirty days from that is December 26, 2007.

15.    For all the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. §§ 1332 and 1441(b).


DATED:  December 21, 2007                    EPSTEIN BECKER & GREEN, P.C.


                                             By: _____
                                                 JAMES A. GOODMAN
                                                 Attorneys for Defendant TURNER
                                                 CONSTRUCTION COMPANY

- 5 -

LA:467710v1

Thompson v. Turner Construction Company

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TURNER CONSTRUCTION COMPANY, a New York corporation;
and DOES 1 through 20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THOMAS THOMPSON, an individual

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
CIVIL BUSINESS OFFICE 14
CENTRAL DIVISION

07 NOV -1  PM 4:20

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

NOV 1 2007

**RECEIVED**
NOV 2 6 2007
EPSTEIN BECKER & GREEN, P.C.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: | CASE NUMBER: 37-2007-00080755-CU-WT-CTL |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* |

SUPERIOR COURT OF CALIFORNIA
330 WEST BROADWAY

SAN DIEGO, CA 92101
CENTRAL DIVISION

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DOUGLAS E. GEYMAN, ESQ.     (SBN 159417)          (619)232-3533    (619)232-3593
LAW OFFICE OF DOUGLAS E. GEYMAN
750 B STREET, SUITE 2635
SAN DIEGO, CA 92101

| DATE: | | | Clerk, by | | , Deputy |
|---|---|---|---|---|---|
| *(Fecha)* NOV 7 2007 | | IMELDA CALINLIM | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* TURNER CONSTRUCTION COMPANY, a New York corporation,

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

Exhibit 1

1   DOUGLAS E. GEYMAN (SBN: 159417)
    Law Office of Douglas E. Geyman
2   750 B Street, Suite 2635
    San Diego, CA 92101
3   Telephone: (619) 232-3533

4

5   Attorney for Plaintiff THOMAS THOMPSON

6

7

CIVIL BUSINESS OFFICE 14
CENTRAL DIVISION

07 NOV -1  PM 4: 20

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

RECEIVED

NOV 2 6 2007

EPSTEIN BECKER & GREEN, P.C.

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF SAN DIEGO, CENTRAL DIVISION

10  THOMAS THOMPSON, an          )   CASE NO.: 37-2007-00080755-CU-WT-CTL
    individual                   )
11                               )   CASE CLASSIFICATION: GENERAL
                                 )   CIVIL
12              Plaintiff,        )
                                 )   COMPLAINT FOR:
13  v.                           )
                                 )   1)   WRONGFUL TERMINATION IN
14  TURNER CONSTRUCTION          )        VIOLATION OF PUBLIC POLICY;
    COMPANY, a New York          )
15  corporation; and Does 1 through 20,  )
    Inclusive,                   )   2)   DEFAMATION - SLANDER;
16                               )
                Defendants.      )   3)   INTENTIONAL INFLICTION OF
17                               )        EMOTIONAL DISTRESS; and
                                 )
18  _____  )   4)   NEGLIGENT INFLICTION OF
                                 )        EMOTIONAL DISTRESS.
19

20          COMES NOW Plaintiff THOMAS THOMPSON ("THOMPSON" or "Plaintiff"),

21  and for causes of actions against Defendants, and each of them, alleges as follows:

22                                     I.

23          **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

24          1.   Plaintiff THOMAS THOMPSON is, and at all times herein mentioned was, an

25  individual residing in the County of San Diego.

26  ////

27  ////

28  ////

                            **Complaint for Damages**
                                       1

Exhibit 1                          -7-

2.    Defendant TURNER CONSTRUCTION COMPANY is, and at all times herein mentioned was, a New York corporation authorized and doing business in the County of San Diego.

3.    Plaintiff is unaware of the true names and capacities of the defendants designated as DOES 1 through 20, inclusive, and therefore sues such defendants by their fictitious names.  Plaintiff will seek leave of this Court, if required, to amend this complaint to allege their true names and capacities when the same has been ascertained.  Plaintiff is informed and believes, and thereon alleges, that each and every defendant designated herein as a DOE is in some manner liable or responsible for the acts, occurrences and omissions hereinafter set forth, and the damages proximately caused thereby.

4.    Plaintiff is informed and believes, and thereupon alleges, that in acting, or failing to act, as hereinafter set forth, each and every defendant was acting as the agent, servant, employee, principal, master and employer of each remaining co-defendant, within the course and scope of such agency, servitude and employment, and with the express or implied consent, knowledge and ratification of each such remaining co-defendant.

5.    On or about March 19, 2005, TURNER, through its San Diego Safety Director, Don Shelton ("Shelton")  hired Plaintiff for the position of Safety Manager.

6.    Plaintiff's first assignment as a TURNER employee was as the Safety Manager on the Cortez Blu project ("Cortez Blu") in Downtown San Diego.  In this position, Plaintiff replaced Conrad Weidenkeller ("Weidenkeller").

7.    Prior to Weidenkeller's departure from Cortez Blu, Plaintiff spent several weeks with Weidenkeller for the stated purpose of learning the job site and being mentored by Weidenkeller.  During this time period, Plaintiff received minimal direction, instruction and training from Weidenkeller, who spent most of his time using his computer to search for materials to use in the remodeling of his home, and chatting with friends via email.

8.    Upon Plaintiff's arrival at Cortez Blu, he became immediately aware that safety maintenance duties had been severely neglected for an extended period of time.  Plaintiff is informed and believes and thereon alleges that Weidenkeller was reprimanded for

1   the safety failures at the job site, and that the reprimands were in writing and maintained in

2   Weidenkeller's personnel file.  Specific safety failures Plaintiff noted at the job site included,

3   but were not limited to, failure to conduct and document proper drug-screening of craftsmen;

4   failure to collect and maintain subcontractors' weekly safety meeting minutes; failure to

5   conduct and document daily job site audits; failure to attend and document weekly foremen'

6   meetings; and failure to monitor the Contractor Controlled Insurance Program ("CCIP").

7         9.      Within weeks of taking over the duties of Safety Manager at Cortez Blu,

8   Plaintiff cured all the safety failures that had existed under Weidenkeller.   Plaintiff also put

9   numerous new systems into place to enhance and maintain safety maintenance and

10  procedures at the job site.  Plaintiff's efforts in this regards were noted, recognized and

11  complimented by TURNER's Cortez Blu management staff, including Superintendent Don

12  Wells, Project Managers Henry Foster and Daphne Rhodes, and Engineer Jan Wesley.

13  Project Executive Jerry Marcis ("Marcis") also praised Plaintiff by stating in a monthly audit

14  that he had never witnessed such a high level of compliance regarding the use of Personal

15  Protective Equipment ("P. P.E.").

16        10.     In or about November 2005, Plaintiff's superior performance was further

17  recognized by TURNER when Marcis asked Plaintiff to consider relocating to the Fahrenheit

18  condominium project in Downtown San Diego to serve in the dual capacities of Safety

19  Manager and Assistant Superintendent. Plaintiff accepted Marcis' offer.  Plaintiff thereafter

20  trained Andy Orozco, the person who would replace him at Cortez Blu.

21        11.     On or about November 10, 2005, Plaintiff began his new position at

22  Fahrenheit and found safety conditions to be in a state of disarray similar to what he had

23  found and corrected at Cortez Blu.  Matt Baroni ("Baroni"), Superintendent at Fahrenheit,

24  informed Plaintiff that his predecessor "was not very good at staying on top of things."

25  Plaintiff again took charges of the situation and corrected the numerous safety issues present

26  at Fahrenheit pursuant to TURNER's safety standards, all the while performing his Assistant

27  Superintendent duties.  Plaintiff's initiative and superior performance in this regard was

28  recognized by Baroni and by a Project Manager from TURNER's Chicago office who was

---

**Complaint for Damages**

3                          Exhibit 1                    -9-

1   brought in to wrap up the project, and who stated "this job is lucky to have you on staff."

2       12.    In or about February 2006, Plaintiff was offered and accepted the opportunity

3   to take over the Del Mar Grand Hotel Project when the Safety Manager for the project,

4   resigned.  Plaintiff was informed and believes that he was chosen over two other Safety

5   Managers in TURNER's San Diego Business Unit because he was the most capable manager

6   for monitoring a job of this size, even though Plaintiff lived twice the distance away from the

7   job site than the other two safety managers.

8       13.    When Plaintiff's arrived at his new assignment as Safety Manager of the Del

9   Mar Grand Hotel Project, he found another dismal safety situation similar to his prior two

10  safety management assignments, as set forth herein.   Plaintiff again addressed the numerous

11  safety failures and violations at the site and brought the project into compliance with

12  TURNER's safety standards.  Plaintiff efforts in this regard were once again recognized and

13  praised by upper management.

14      14.    In or about June 2006, TURNER terminated the employment of  Doug

15  Shelton ("Shelton"), the San Diego Business Unit Safety Director and Plaintiff's manager.

16  Shelton was replaced by Tracy Jones ("T. Jones"), who had been the Los Angeles Business

17  Unit Safety Director prior to his assignment to San Diego..

18      15.    Prior to T. Jones' arrival in San Diego, Plaintiff had enjoyed an upwardly-

19  mobile career path with TURNER marked with praise from upper management for his

20  exemplary work, regular pay increases, excellent annual performance reviews, and a letter of

21  congratulations for his commitment to safety.  This trend was reversed following T. Jones'

22  arrival in San Diego.  Plaintiff is informed and believes and thereon alleges that T. Jones

23  consciously and intentionally set about to causes problems that would culminate in the

24  wrongful termination of Plaintiff's employment.

25      16.    From the date of Plaintiff's employment with TURNER through in or June

26  2006, Plaintiff canceled two scheduled vacations at is management's request, and otherwise

27  took very little time off from work. This was due to the lack of competent safety personnel to

28  cover his job duties while Plaintiff took time off.  Plaintiff also had a desire to be assigned to

---

**Complaint for Damages**

4

Exhibit 1

-10-

1    a project in Downtown San Diego in order to shave two hours off of his daily commute to

2    work.  When Plaintiff expressed to T. Jones his desire to take a vacation and to be transferred

3    to a Downtown San Diego Project, his request was denied.

4        17.    After Plaintiff's request to take vacation and for a transfer downtown, Plaintiff

5    became aware of changes in T. Jones' interactions and demeanor toward him.  T. Jones

6    began making snide remarks to Plaintiff and criticizing Plaintiff's level of performance.  On

7    one occasion, T. Jones informed Plaintiff that the position of Safety Manager was out of

8    Plaintiff's league.  Plaintiff relayed this criticism to his fellow employees who had knowledge

9    of his high level of performance, who were surprised by this comment.

10        18.    In or about August 2006, T. Jones hired Leary Jones ("L. Jones"), a friend

11    from Denver, Colorado, to take over the Safety Manager position at the Del Mar job site.

12    Plaintiff was assigned to spend two weeks training L. Jones to take over the position.

13    During this two-training period, L. Jones spent the bulk of his time making arrangements to

14    move his family to San Diego and going to lunch with T. Jones, making it virtually

15    impossible for Plaintiff to spend any time training L. Jones.  When Plaintiff attempted to train

16    L. Jones pursuant to TURNER safety policies and procedures, L. Jones dismissed Plaintiff's

17    instructions by saying he had his own way of doing things.

18        19.    After two weeks of trying to train L. Jones, Plaintiff was ordered by T. Jones

19    to manage the clubhouse.  He was also informed that L. Jones would manage the hotel.  In

20    order to accomplish this assignment, Plaintiff was required to split his time between the job

21    site in Del Mar and his new site assignment at the Aperture in Downtown San Diego.

22        20.    In or about July 2006, Plaintiff took a one-week vacation.  Upon his return to

23    work, Plaintiff became the subject of T. Jones' increased and accelerated harassment and

24    denigration.

25        21.    On the first day back at work following vacation, Plaintiff participated in an

26    audit with T. Jones, L. Jones and a Liberty Mutual auditor.  During the audit, Plaintiff noticed

27    that many of the safety procedures he had put in place had not been performed while he was

28    away on vacation.

---

**Complaint for Damages**

5                                  Exhibit 1                          -11-

22.    During the audit walkthrough, T. Jones informed Plaintiff that L. Jones had been promoted to Senior Safety Manager. T. Jones also began belittling Plaintiff for the safety inadequacies that had occurred while Plaintiff was away on vacation. The Clubhouse was in particularly poor condition. T. Jones informed the Liberty Mutual auditor that the Clubhouse was Plaintiff responsibility, although he knew that Plaintiff had been away on vacation and was not responsible for the safety failures that had occurred in his absence.

23.    At one point during the audit walkthrough as described herein, Plaintiff confronted T. Jones and requested that he cease his verbal abuse. T. Jones responded by telling Plaintiff that they would have "a long, long talk real soon." This talk never occurred. When Plaintiff attempted to contact T. Jones to address whatever issues there were between them, Plaintiff's phone calls and emails were not responded to.

24.    In or about September 2006, T. Jones resigned TURNER's employment and L. Jones, who less than three months earlier was hired as Plaintiff's understudy, was promoted to the position of San Diego Business Unit Safety Director. Plaintiff did not know of or anticipate this change in management, nor was he advised of or included in the decision making process for this management change.

25.    After L. Jones was promoted to the position of Safety Director, Plaintiff's transfer to Downtown San Diego was rescinded. Plaintiff was ordered to remain at the Del Mar job site, and was again placed in charge of the Del Mar Grand Hotel which had been assigned to L. Jones approximately three weeks prior. In the time period that the hotel was L. Jones' responsibility, he allowed all of the systems Plaintiff had put into place to disintegrate. Plaintiff learned that L. Jones had employed the services of temporary laborers to perform many of the safety functions normally performed by the onsite safety manager. Plaintiff was also required to perform many of L. Jones' job duties to facilitate and allow time for L. Jones to arrange for the movement of his family from Denver to San Diego.

26.    In or about early- October 2006, L. Jones hired the son of an upper management Turner employee fort the position of Safety Manager.

////

27.    In or about mid-October 2006, L. Jones took nine days off work during which time he moved his family from Denver to San Diego.

28.    On or about October 25, 2006, on his first day back at work, L. Jones informed Plaintiff that he was required to attend a meeting with TURNER Operations Manager Ron Rudolph at 1:00 p.m. When Plaintiff inquired about the purpose of the meeting, L. Jones replied that he did not know. When Plaintiff appeared for the 1:00 p.m. meeting with Rudolph, Plaintiff was informed that his employment was being terminated for poor performance. L. Jones was also present for this meeting. Rudolph also informed Plaintiff that if any potential future employers should contact TURNER for a reference, they would not be told that Plaintiff's employment had been terminated for poor performance.

29.    Prior to the date of his employment termination, Plaintiff was never informed by TURNER, orally or in writing, that his work performance was substandard.

30.    Plaintiff believes and thereon alleges that the termination of his employment with TURNER was intentionally orchestrated by T. Jones and L. Jones because they were aware of Plaintiff's strict adherence to TURNER's safety policies and procedures. T. Jones initially, and thereafter L. Jones, wanted to institute their own methods of safety management at TURNER job sites. Plaintiff's retention as a TURNER employee would interfere and/or negate their intentions in this regard.

31.    After TURNER terminated Plaintiff's employment on or about October 25, 2006, Plaintiff was unable to find a job in his chosen profession in the San Diego area. Plaintiff believes and thereon alleges that his inability to find employment in his chosen field of employment is directly related to TURNER's influence in the construction market in San Diego.

## II.

### FIRST CAUSE OF ACTION

#### Wrongful Termination in Violation of Public Policy

32.    Plaintiff incorporates the allegations of paragraphs 1 through 31, above, as though fully set forth herein.

---

33.    Plaintiff employment with TURNER was terminated because he strictly followed California's and TURNER's stated safety policies and procedures for construction job sites as alleged herein.

34.    Defendants', and each of their, acts against Plaintiff as alleged herein represent a violation of a clear public policy. (*Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980); Gantt v. Sentry Ins., 1 Cal.4th 1083 (1992))

35.    Plaintiff's claim of wrongful termination in violation of public policy is supported by the conduct described herein.

36.    As a direct, foreseeable and proximate result of the aforementioned conduct by Defendants, and each of them, Plaintiff has suffered, and continues to suffer, losses in earnings, earning capacity and other benefits of employment, all in an amount yet to be ascertained. Plaintiff will, therefore seek leave of court to amend this Complaint to allege the exact amount of such damages when the same becomes known to him, or to conform to proof at trial.

37.    As a proximate result of Defendants', and each of their, willful, knowing and intentional acts, Plaintiff has suffered, and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at trial.

38.    Plaintiff is informed and believes, and thereupon alleges, that the actions of Defendants, and each of them, as hereinabove alleged, were willful, wanton, malicious and oppressive, and done with knowledge that their conduct was unlawful. Notwithstanding such knowledge, Defendants, and each of them, despicably subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights as hereinabove alleged. Plaintiff is, therefore, entitled to punitive and exemplary damages in an amount sufficient to discourage such future actions, and in the discretion of the Court.

39.    Plaintiff is informed and believes, and thereupon alleges, that Defendants, and each of them, engaged in other actionable conduct not enumerated in this Complaint. Plaintiff will, therefore, seek leave of court to amend this Complaint to allege the specific

1    acts when same become known to him, or to conform to proof thereof at trial.

2        40.    As a result of Defendants', and each of their, discriminatory acts as alleged

3    herein, Plaintiff has no plain, adequate or complete remedy at law.  Therefore, Plaintiff

4    requests that he be made whole and afforded all benefits attendant thereto that would have

5    been afforded him but for said wrongful acts of Defendants, and each of them.

6                                    III.

7                        **SECOND CAUSE OF ACTION**

8                           **Defamation - Slander**

9        41.    Plaintiff incorporate by reference paragraphs 1 through 40 of this Complaint

10    as though fully set forth herein.

11        42.    Plaintiff believes and thereon alleges that after his employment was

12    terminated on or about October 2006, TURNER published false and defamatory information

13    concerning Plaintiff's work performance while he was in TURNER's employ.  The

14    information published by TURNER reflected negatively upon Plaintiff's character and work

15    performance,  and impaired Plaintiff's ability to obtain and maintain employment in his

16    chosen professional field in the San Diego market, and thereby negatively impacted

17    Plaintiff's financial well-being.

18        43.    The defamatory and false information published by TURNER concerning

19    Plaintiff was untruthful and unprivileged, and was published to third parties with no interest

20    or right to have such information.

21        44.    At the time of publishing the false and defamatory information concerning

22    Plaintiff, TURNER knew or should have known that such information would have a negative

23    impact on Plaintiff's ability to secure and maintain employment in the San Diego market..

24        45.    As a proximate result of the actions taken by TURNER in publishing the

25    defamatory and false information, Plaintiff has been damaged in an amount according to

26    proof at trial.

27        46.    The actions of Defendants, and each of them, as alleged herein, were done

28    with malice, fraud and oppression, and with conscious disregard for the Plaintiff's rights.

1 Defendants', and each of their, conduct was negligent to such a degree as to entitle Plaintiff

2 to punitive and exemplary damages in an amount sufficient to discourage such future actions

3 of Defendants and others.

**IV.**

**THIRD CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

7   47.   Plaintiff incorporate by reference paragraphs 1 through 46 of this Complaint

8 as though fully set forth herein.

9   48.   The conduct of Defendants, and each of them, as set forth herein, was extreme

10 and outrageous to a degree as to be outside the bounds of decency in a civilized society.

11   49.   The conduct of Defendants, and each of them, and was done in reckless

12 disregard and with the intention to cause emotional distress in Plaintiff.

13   50.   As a result of Defendants', and each of their, extreme and outrageous conduct,

14 Plaintiff has suffered, and continues to suffer severe emotional distress and mental anguish.

15   51.   The severe emotional distress and mental anguish that Plaintiff has suffered,

16 and continues to suffer, was actually and proximately caused by Defendants', and each of

17 their, extreme and outrageous conduct as set forth herein.

18   52.   As a direct and proximate cause of Defendants', and each of their, actions,

19 Plaintiff has suffered, and will continue to suffer, a loss of earnings and other employment

20 benefits and job opportunities.  Plaintiff is thereby entitled to general and special damages in

21 an amount to be proven at trial.

22   53.   The acts of Defendants, and each of them, were done with malice, fraud and

23 oppression, and with conscious disregard for the Plaintiff's rights, and with the intent to

24 injure Plaintiff.  Defendants', and each of their, conduct was extreme and outrageous to such

25 a degree as to entitle Plaintiff to punitive and exemplary damages in an amount sufficient to

26 discourage such future actions of Defendants and others.

27 ////

28 ////

## V.

## **FOURTH CAUSE OF ACTION**

### **Negligent Infliction of Emotional Distress**

54.    Plaintiff incorporate by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

55.    The conduct of Defendants, and each of them as set forth herein, was negligent and in reckless disregard for the emotional distress and mental anguish it would cause in Plaintiff.

56.    Defendants, and each of them, reasonably knew or should have known that their negligent acts and/or failures to act would cause injury to Plaintiff.

57.    The severe emotional distress and mental anguish that Plaintiff has suffered, and continues to suffer, was actually and proximately caused by Defendants', and each of their, negligent conduct.

58.    As a direct and proximate cause of Defendants', and each of their, negligent actions, Plaintiff has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and special damages in an amount to be proven at trial.

59.    The negligent acts of Defendants, and each of them, were done with malice, fraud and oppression, and with conscious disregard for the Plaintiff's rights. Defendants', and each of their, conduct was negligent to such a degree as to entitle Plaintiff to punitive and exemplary damages in an amount sufficient to discourage such future actions of Defendants and others.

WHEREFORE, Plaintiff respectfully requests relief and judgment against Defendants, and each of them, as follows:

1.    For compensatory, special and general damages according to proof at trial;

2.    For punitive damages in an amount sufficient to discourage such future wrongful acts by Defendants and others, and in the Court's discretion;

3.    For attorneys fees and costs, according to proof at trial; and

---

1

4.    For such other and further relief as the Court may deem just and proper..

2

3    October 30 , 2007                    THE LAW OFFICE OF DOUGLAS E. GEYMAN

4

5

6                                        By: _____

7                                             DOUGLAS E. GEYMAN
                                             Attorney for Plaintiff THOMAS THOMPSON
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Complaint for Damages**
12                    Exhibit 1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

| | | FOR COURT USE ONLY |
|---|---|---|
| STREET ADDRESS: | 330 West Broadway | |
| MAILING ADDRESS: | 330 West Broadway | |
| CITY, STATE, & ZIP CODE: | San Diego, CA 92101-3827 | |
| BRANCH NAME: | Central | |

PLAINTIFF(S):   Thomas Thompson

DEFENDANT(S): Turner Construction Company

SHORT TITLE:    THOMPSON VS. TURNER CONSTRUCTION COMPANY

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00080755-CU-WT-CTL |
|---|---|

Judge: Steven R. Denton                                   Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program

☐ Private Neutral Evaluation

☐ Private Mini-Trial

☐ Private Summary Jury Trial

☐ Private Settlement Conference with Private Neutral

☐ Other (specify): _____

☐ Court-Ordered Nonbinding Arbitration

☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Reference to General Referee

☐ Private Reference to Judge

☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)  _____

_____

_____

_____

Alternate: (mediation & arbitration only)  _____

Date: _____                    Date: _____

_____                          _____

Name of Plaintiff                                Name of Defendant

_____                          _____

Signature                                        Signature

_____                          _____

Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____                          _____

Signature                                        Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 11/06/2007

_____

JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

Page: 1

Exhibit 1                    2    -19-

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

1.  At the time of service I was at least 18 years of age and **not a party to this legal action.**

2.  My business address is 1925 Century Park East, Suite 500, Los Angeles, California 90067-2506.

3.  I served copies of the following documents (specify the exact title of each document served):

    **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332 and 1441(b)**

4.  I served the documents listed above in item 3 on the following persons at the addresses listed:

    **Attorney for Plaintiff:**

    **Douglas E. Geyman**          **Tel:  (619) 322-3533**
    **Law Office of Douglas E. Geyman**    **Fax:**
    **750 B Street, Suite 2635**
    **San Diego, California  92101**

5.  a. ☐  **By personal service.** I personally delivered the documents on the date shown below to the persons at the addresses listed above in item 4.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party delivery was made to the party or by leaving the documents at the party's residence between the hours of eight in the morning and six in the evening with some person not less than 18 years of age.

    b. ☒  **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and *(specify one):*

        (1) ☐  deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid on the date shown below, or

        (2) ☒  placed the envelope for collection and mailing on the date shown below, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at , California.

c. ☐  **By overnight delivery.** I enclosed the documents on the date shown below in an envelope or package provided by an overnight delivery carrier and addressed to the person at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐  **By messenger service.** I served the documents on the date shown below by placing them in an envelope or package addressed to the person on the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this proof of service or be contained in the Declaration of Messenger below.)

e. ☐  **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents on the date shown below to the fax numbers of the persons listed in item 4. No error was reported by the fax machine that I used. A copy of the fax transmission, which I printed out, is attached.

f. ☐  **By e-mail or electronic transmission.** Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent on the date shown below to the e-mail addresses of the persons listed in item 4. I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

6.  I served the documents by the means described in item 5 on *(date):* December 26, 2007.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| 12/26/07 | Lynn Ellis | |
| --- | --- | --- |
| DATE | (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS**

THOMAS THOMPSON

**DEFENDANTS**

TURNER CONSTRUCTION COMPANY

FILED

2007 DEC 26 PM 2:22

07 CV 2412 JM JMA

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

BY FAX

**(b)**   County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

Douglas Geyman, Law Office of Douglas E. Geyman, 750 B Street, Suite 2635, San Diego, California 92101, (619) 322-3533

Attorneys (If Known)

James A. Goodman, Epstein Becker & Green, 1925 Century Park East, Suite 500, Los Angeles, California 90067, (310) 556-8861

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) |
|---|---|

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

☐ 1   Original Proceeding

☒ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTIONS 1332 and 1441(b)

Brief description of cause:
Diversity

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 145872   AMOUNT 350,

12/26/07   JM

APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 145872    — SR**

**December 26, 2007
14:15:41**

**Civ Fil Non-Pris**
USAO #.: O7CV2412 CIV. FIL.
Judge..: JEFFREY T MILLER
Amount.:                $350.00 CK
Check#.: BC#3005746

**Total—>  $350.00**

FROM: THOMPSON V. TURNER CONST. CO.
      CIVIL FILING